**FILED**
**Feb 23, 2023**
**07:36 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **JEFFREY GARLAND,** | ) | **Docket No.: 2022-07-0162** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 18240-2022** |
| **CITY OF SAVANNAH,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This Court held an Expedited Hearing on February 15, 2023, where Mr. Garland requested an order requiring Savannah to pay past temporary disability benefits and reimbursement for unauthorized medical expenses for an alleged left-elbow injury. Savannah defended on the grounds of causation and notice. The Court holds that Mr. Garland is not likely to prevail at trial as to causation and denies the request for benefits.

## History of Claim

Mr. Garland works as a police officer for the City of Savannah.

On Saturday, October 30, 2021, while attempting to help Emergency Medical Services enter a home, he fell backward and injured his left elbow. In the weeks before this incident, Mr. Garland, a self-professed "gym rat," had been treating for bursitis in both elbows and significantly modified his normal exercise regimen.

Mr. Garland testified that immediately after his fall, his left elbow swelled significantly, and the pain worsened. Still, he worked that day and the next, and although Mr. Garland experienced pain that caused difficulty in performing some work-related tasks, he admitted that he did not tell anyone with the police force about his fall.[1]

---

[1] Savannah introduced body cam and dash cam video purported to have been taken on October 30 that shows arrests being made by Officer Garland. However, there was some question as to whether the date on the video was accurate. Further, while one of the videos shows Officer Garland assisting another officer with a person resisting arrest, the initial resistance did not appear to be significant, and the rest occurred off-camera, although voices could be heard. Thus, the Court gives little weight to the videos.

On Monday, which was his day off, Mr. Garland attempted to lift weights, but the pain was so bad that he could not do anything with his left arm. He went to a clinic on his own the next day, had his elbow drained, and was referred to an orthopedist. The record from the visit said the pain "started one week earlier" and did not mention a work-related fall.

Mr. Garland went to work after the clinic visit. At lunch, he showed a video of his elbow being drained to his some of his fellow officers, including his immediate supervisor, Sergeant Wesley Murphy, and they saw how swollen his elbow was. However, Mr. Garland did not tell anyone about the fall or report a work-related injury.

Mr. Garland then treated with orthopedist Kenneth Nord on November 9. He complained of pain in both elbows, although the left was greater. None of Dr. Nord's records referred to a work-related fall or addressed causation.

Although he continued working full duty for several months, Mr. Garland's elbow caused him so much pain that he could not fully straighten his arm or lie on his left side. After conservative treatment failed to alleviate his symptoms, Mr. Garland underwent an MRI. The MRI revealed a "high-grade disruption" of the triceps tendon with chronic bone spurring where the tendon attached to the bone, as well as a fractured bone spur attached to the disrupted tendon that created a loose body in the elbow.

On March 4, Dr. Nord recommended surgery, and it was then that Mr. Garland gave Savannah official notice of the October 30 fall. Savannah denied his claim due to lack of notice. Mr. Garland had surgery on March 31 through his health insurance. He was off work from that date through sometime in June and had to use his vacation and sick leave during his recovery.

Mr. Garland's rationale for not reporting the October 30 fall as a work-related injury or telling his doctors about it was that until the MRI, he thought his problems were solely due to his pre-existing bursitis. Once he knew of the fractured bone, he deduced that it must have happened with the fall.

Mr. Garland's fellow officers, Mr. Murphy and Michael Darrington, testified on Savannah's behalf. Mr. Murphy stated that at some point Mr. Garland told him about the October 30 fall, but he could not say when. However, he did remember Mr. Garland showing him the drainage video and his swollen elbow.

Mr. Darrington corroborated Mr. Murphy's testimony about seeing the drainage video and the swollen elbow. However, he worked with Mr. Garland on the weekend of October 30, and he did not see any pain or limitations in Mr. Garland's use of his left elbow, nor did he note any complaints from him.

2

Savannah offered further testimony from Captain Jeremy Bowen, Chief Michael Pitts, and former HR manager Bobbie Matlock. All testified that they did not know of Mr. Garland's alleged work-related injury until he notified them on March 4.

On cross-examination, Mr. Murphy, Mr. Darrington, and Mr. Bowen all confirmed that they had no reason to question Mr. Garland's integrity.

### Findings of Fact and Conclusions of Law

Mr. Garland must present evidence from which this Court can determine that he is likely to prove at trial that his left elbow condition arose primarily out of and in the course and scope of his employment with Savannah and that he gave sufficient notice of this alleged work injury. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court will first address causation.

Mr. Garland must present evidence that his employment caused an "injury" as that term is defined under Tennessee Workers' Compensation Law. An accidental injury is one that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(12)(A) (2022). Also, Mr. Garland must prove causation to a "reasonable degree of medical certainty," which requires an expert medical opinion. Tenn. Code Ann. § 50-6-102(12)(C).

As Savannah's counsel observed at the hearing, while lack of notice is a defense in and of itself, it is also significant as to whether Mr. Garland has shown a likelihood of proving causation. The fact that Mr. Garland waited over four months to tell anyone about his fall on October 30 must be considered in determining whether the alleged fall was the actual cause of his elbow symptoms.

In his testimony, Mr. Garland unsuccessfully tried to walk a tightrope between notice and causation. On one hand, he said that the fall immediately caused such a significant increase in his pain and swelling that it hampered his ability to effectively use his left arm. Thus, when he learned that he had a fracture in his elbow, he was able to attribute it to the fall. On the other hand, when trying to explain why he did not immediately notify his employer about the incident, he said that he thought his symptoms were due to his pre-existing bursitis, and he did not connect the fall with an actual injury. These positions are hard to reconcile.

Other parts of the record also weigh against causation. Mr. Garland testified that immediately before the fall, he received treatment for elbow pain that was severe enough to caused him to modify his workout plan. The medical records contained no record of a work-related fall. In fact, the November 2 record said the pain began a week earlier, not on October 30, and Dr. Nord's initial note referred to pain in both elbows. Further, Mr.

3

Garland did not produce any witnesses to testify that a fall occurred other than himself.

Finally, Mr. Garland did not present any medical opinions stating that the fall primarily caused his elbow injury and need for surgery as required by Tennessee Code Annotated section 50-6-102(12)(C). This is not necessarily fatal to his claim. Under some circumstances, an employee who has not proven causation by expert opinion may still be entitled to a panel of doctors under Tennessee Code Annotated section 50-6-204(a)(3)(A)(i). *Hawes v. McLane Co., Inc.*, 2021 TN Wrk Comp. App. Bd. LEXIS 30, at \*10 (Aug. 25, 2021).

However, Mr. Garland had an opportunity to obtain a causation opinion from Dr. Nord, an orthopedic specialist, who not only treated Mr. Garland for months but eventually performed surgery. He did not do so.[2]

Given the record, the Court holds that Mr. Garland is unlikely to prove causation at trial. Thus, his requests for temporary disability benefits, reimbursement of medical expenses, and a panel of physicians are denied at this time.

Despite the denial of benefits on causation grounds, the Court will also address notice. Tennessee Code Annotated section 50-6-201(a) requires injured employees to give written notice within fifteen days of the injury, and if they do not, compensation is barred "unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." However, defective notice will not bar compensation unless the employer can show prejudice due to lack of notice. Tenn. Code Ann. § 50-5-201(a)(3).

The Court holds that Mr. Garland did not give notice within fifteen days of the alleged injury. In addition, his excuse—that he did not know he sustained an injury until he had the MRI showing the fracture—is not reasonable, given the record. However, the Court also holds that Savannah did not show it is likely to prove prejudice, since Mr. Garland continued to work until he gave notice and did not have surgery before Savannah denied his claim. Thus, lack of notice alone would not have been enough to deny Mr. Garland benefits.

IT IS, THEREFORE, ORDERED THAT:

1. Mr. Garland's requests for benefits are denied.

2. This case is set for a Status Hearing on **April 5, 2023, at 9:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a

---

[2] Mr. Garland asserted that he had obtained a causation opinion from Dr. Nord, but he did not make it an exhibit at trial.

determination of the issues without the party's participation.

**ENTERED on February 23, 2023.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Hearing
5. Savannah's Motion to Allow Witness by Telephone
6. Order Permitting Witness by Telephone
7. Savannah's Exhibit List
8. Savannah's Witness List
9. Order Denying Witness by Telephone

Exhibits:
1. Mr. Garland's affidavit
2. Notice of Denial
3. Wage Statement
4. March 16, 2022 record from Nurse Practitioner for I.D. only
5. Medical bills from Sports Orthopedic and Spine
6. Medical records from Sports Orthopedics and Spine
7. Medical Bills from Hospital for I.D. only
8. Wesley's Murphy's Statement for I.D. only
9. February 2007 First Report of Injury
10. December 2007 First Report of Injury
11. September 2008 First Report of Injury
12. July 2009 First Report of Injury
13. Notice of Denial
14. Accident/Injury Report
15. Body cam and dash cam videos

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on February 23, 2023.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey Garland | | | X | boziegarland@live.com |
| Robert O. Binkley | | | X | rbinkley@raineykizer.com |

_____

**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

6



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*